1  **JENNIFER L. COON**
   California State Bar No. 203913
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: jennifer_coon@fd.org

5  Attorneys for Mr. Elfego Arce-Martinez

6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                      **(HONORABLE DANA M. SABRAW)**

11 | UNITED STATES OF AMERICA,        )   CASE NO. 07CR3207-DMS
                                     )
12 |         Plaintiff,               )   DATE:      March 7, 2008
                                     )   TIME:      11:00 a.m.
13 | v.                               )
                                     )   STATEMENT OF FACTS AND
14 | **ELFEGO ARCE-MARTINEZ,**        )   MEMORANDUM OF POINTS AND
                                     )   AUTHORITIES IN SUPPORT OF MOTIONS
15 |         Defendant.               )
                                     )

16

17                                    **I.**

18                         **STATEMENT OF FACTS**[1]

19 **A.    Arrest**

20      Mr. Arce-Martinez was arrested on November 2, 2007. The government alleges that, on that date,

21 Border Patrol Agent J. Morales responded to a sensor alert, and came into contact with Mr. Arce-Martinez

22 in an area located north of the border and seven miles east of the Tecate, California port of entry. The

23 government further alleges that, after questioning Mr. Arce-Martinez regarding his citizenship and permission

24 to legally enter the United States, the border patrol agent arrested Mr. Arce-Martinez and transported him to

25 the Campo Border Patrol station, where he was subjected to further questioning. He was subsequently

26 charged with one count of violating 8 U.S.C. § 1326(a) and (b) (illegal alien found in the United States after

27 deportation).

28 ──────────────────────
   [1] The following statement of facts and exhibits is based primarily on information and
   evidence provided by the government in discovery. Mr. Arce-Martinez does not admit the accuracy
   of such information and evidence and reserves the right to challenge its accuracy.

1  **B.      Underlying Deportation**

2       Mr. Elfego Arce-Martinez is a long-time lawful resident of the United States and a beloved husband,
3  father, and grandfather. He applied for Temporary Residence in August 1987, as part of the amnesty
4  program. *See* Exhibit A (Applications for Waiver of Grounds of Excludability and for Temporary Resident
5  Status).[2] At that time, Mr. Arce-Martinez had a steady history of employment in the U.S., his wife also had
6  been approved for lawful residence, and the couple already had two U.S.-born children. *See id.* Mr. Arce-
7  Martinez was granted temporary residence status in April 1988. *See* Exhibit B (Order Granting Temporary
8  Resident Status). He became a lawful permanent resident of the United States on December 1, 1989. *See*
9  Exhibit C (Memorandum re: Status Verification). He has been married to his wife, Petra Ramon-Calvillo,
10 who is also a long-time lawful permanent resident, for 29 years. The couple now have four grown children
11 and five young grandchildren, all of whom are U.S. citizens.

12      According to information provided by the government, on July 1, 1996, an immigration judge ordered
13 Mr. Arce-Martinez removed from the United States. *See* Exhibit D (Order of the Immigration Judge).[3] The
14 proceedings were initiated by an Order to Show Cause dated October 22, 1995. *See* Exhibit E (Order to Show
15 Cause). In the OSC, the immigration service alleged that Mr. Arce-Martinez had suffered a conviction on
16 November 21, 1990, for transportation of methamphetamine in violation of Cal. Health & Safety Code
17 § 11379. *See id.* The immigration service further alleged that Mr. Arce-Martinez was removable because
18 this conviction was an aggravated felony. *See id.* No other basis for removal was alleged. *See id.*

19      At the removal hearing, the IJ erroneously found that Mr. Arce-Martinez had suffered an aggravated
20 felony. As a result, the IJ mis-informed Mr. Arce-Martinez that he was removable. In addition, the IJ mis-
21 informed him that he did not qualify for Section 212(c) relief, and failed to inform him of a number of other
22 forms of relief for which he might be eligible – including, but not limited to, cancellation of removal,
23 adjustment of status, and voluntary departure.[4]

24 _____

25  [2] Exhibits A through E are true and correct copies of documents produced by the government
26  in discovery from Mr. Arce-Martinez's A-file.

27  [3] The 1996 IJ order, based on Mr. Arce-Martinez's alleged conviction for an aggravated
    felony, is the only IJ order supporting any removals in this case.

28
    [4] A transcript of relevant portions of the deportation tape will be submitted under separate
    cover.

## II.

## MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATION

The indictment against Mr. Arce-Martinez must be dismissed because the underlying deportation order violated due process. That deportation order was invalid for two separate and independent reasons. First, the IJ erroneously found that Mr. Arce-Martinez's alleged conviction for transportation of a controlled substance under California Health & Safety Code § 11379 was an aggravated felony rendering him removable. To the contrary, however, the Ninth Circuit has held that California "transportation" offenses, including § 11379, are categorically overbroad. Mr. Arce-Martinez did not have a conviction that qualified as an "aggravated felony," and thus was clearly and unconstitutionally prejudiced when he was erroneously found removable on that ground. Second, the IJ misinformed Mr. Arce-Martinez that he was ineligible for Section 212(c) relief. As a longtime lawful permanent resident, with substantial family ties to the United States and other equities, Mr. Arce-Martinez had plausible grounds for that relief. Nevertheless, the IJ erroneously advised Mr. Arce-Martinez that the recent enactment of AEDPA had eliminated the availability of that relief to him as an aggravated felon. In fact, however, as the U.S. Supreme Court has subsequently made clear, AEDPA cannot be applied retroactively to eliminate Section 212(c) relief to aliens like Mr. Arce-Martinez. Because Mr. Arce-Martinez's pending charge is based on a removal that was fundamentally unfair, this Court must dismiss the indictment against him.

### A.    Requirements for Collateral Attack of a Removal Order

It is well-established that a defendant who has been charged with a Section 1326 offense has a right to collaterally attack the underlying removal order on due process grounds. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) (holding that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding"); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (same). Pursuant to Section 1326(d), to attack a deportation collaterally, a defendant must demonstrate: (1) that the defendant exhausted all administrative remedies available to him to appeal his removal order; (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d).

**B.    The Underlying Removal Was Invalid Because Mr. Arce-Martinez Is Not An Aggravated Felon**

During Mr. Arce-Martinez's immigration proceedings, the immigration judge erroneously found Mr. Arce-Martinez removable as an aggravated felon based on his alleged conviction for transportation of a controlled substance in violation of Cal. Health & Safety Code § 11379. The immigration judge's erroneous conclusion that this conviction was an aggravated felony was the sole basis for the order of removal.

An underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *See Ubaldo-Figueroa*, 364 F.3d at 1048. An IJ violates due process by erroneously determining that an alien's prior conviction is an aggravated felony, and therefore erroneously advising him that he is ineligible for discretionary relief. *See United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006). Moreover, Mr. Arce-Martinez suffered prejudice because he had not committed an aggravated felony, the only ground of removability pursued at the removal hearing. *See id.* at 930 (alien's "Notice to Appear charged him as removable only for having committed an aggravated felony; as discussed above, [alien's] prior conviction did not fit that definition. Thus, [the alien] was removed when he should not have been and clearly suffered prejudice").

**1.    Cal. Health & Safety Code § 11379 Is Not an Aggravated Felony**

The Immigration Judge erred when he held that a prior conviction under Cal. Health & Safety Code § 11379 is an aggravated felony. The statutory definition for an aggravated felony is set forth in 8 U.S.C. § 1101(a)(43).[5] To determine whether a conviction qualifies as an aggravated felony, the Court must first use the "categorical approach," under which it "look[s] to the statutory definition of the crime, rather than to the defendant's specific conduct." *See Taylor v. United States*, 495 U.S. 575, 588-89 (1990); *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1127 (9th Cir. 2007).

Section 11379(a) provides criminal penalties for "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish,

---

[5] Under 8 U.S.C. § 1101(a)(43), an aggravated felony is defined to include various listed criminal offenses, one of which is "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." A "drug trafficking crime" is defined in turn to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)..." 18 U.S.C. § 924(c)(2).

administer, or give away, or attempts to import into this state or transport any [defined] controlled substance..." Cal. H&S § 11379(a). In *United States v. Rivera-Sanchez*, 247 F.3d 905, 909 (9th Cir. 2001), the Ninth Circuit found that California "transportation" offenses do not qualify as aggravated felonies under 8 U.S.C. § 1101(a)(43). Specifically, the court noted that H&S § 11360(a) – a nearly identical statute, substituting only the term "marijuana" for "controlled substance – was not categorically an aggravated felony because it criminalized a wide variety of acts, including transportation for personal use; offers to transport, sell, furnish, administer, or give away; and solicitation of prohibited acts. *See Rivera-Sanchez*, 247 F.3d 905, 909 (9th Cir. 2001); *see also United States v. Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir. 2004) (applying *Rivera-Sanchez* analysis to H&S § 11379).

Consistent with this precedent, the Ninth Circuit recently held, in no uncertain terms, that "a conviction under § 11379(a) is not categorically an 'aggravated felony' under 8 U.S.C. § 1101(a)(43)(B)." *Sandoval-Lua*, 499 F.3d at 1129. Therefore, the prior conviction on which the Immigration Judge relied is not categorically an aggravated felony. Moreover, Mr. Arce-Martinez is not aware of, nor did the Immigration Judge review, any judicially noticeable documents that would establish that his conviction is an aggravated felony under the modified categorical approach. Accordingly, the Immigration Judge erred in determining that Mr. Arce-Martinez was removable due to a prior aggravated felony conviction.

**2.    Mr. Arce-Martinez is Excused from § 1326(d)'s Exhaustion Requirement.**

Following his 1996 removal hearing, Mr. Arce-Martinez did not seek administrative review of the IJ's order of removal. Normally, a defendant charged with violating § 1326 who wishes to collaterally challenge his removal must have exhausted any administrative remedies available to him. *See* 8 U.S.C. § 1326(d)(1). However, a defendant need not satisfy the exhaustion requirement if his waiver of an administrative appeal was invalid. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1183-84 (9th Cir. 2001). An IJ's failure to advise an alien of his eligibility for relief renders the appeal waiver invalid, because it was not "considered and intelligent." *See United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

Here, the IJ misinformed Mr. Arce-Martinez of his eligibility for relief from removal. Specifically, the IJ misinformed Mr. Arce-Martinez that he was removable as an aggravated felon; and also failed to inform him that he was eligible for a number of forms of relief, such as cancellation of removal, adjustment of status,

and voluntary departure. In this specific context, the Ninth Circuit has excused a defendant from exhausting his administrative rights because of an IJ's erroneous advisal that the defendant was removable as an "aggravated felon." *Camacho-Lopez*, 450 F.3d at 930. As in *Camacho-Lopez*, and due to the IJ's error, Mr. Arce-Martinez is excused from § 1326(d)'s exhaustion requirement.

### 3. Mr. Arce-Martinez was Denied Judicial Review

Similarly, the IJ's failure to inform Mr. Arce-Martinez of his eligibility for relief from removal deprived him of an opportunity to seek judicial review of the IJ's removal order. A defendant seeking to collaterally challenge a deportation under § 1326(d) normally must show that he was improperly denied the opportunity for judicial review. *See* 8 U.S.C. 1326(d)(2). However, an IJ's failure to inform a person of their eligibility for relief from removal satisfies the requirement that a defendant be denied his opportunity to seek judicial review. *Camacho-Lopez*, 450 F.3d at 930; *Ubaldo-Figueroa*, 364 F.3d at 1047; *Ortiz-Lopez*, 385 F.3d at 1204 n.2. In this context, the Ninth Circuit has held that a defendant was denied judicial review because of an IJ's erroneous advisal that the defendant was removable as an "aggravated felon." *Camacho-Lopez*, 450 F.3d at 930. As in *Camacho-Lopez*, and due to the IJ's error, Mr. Arce-Martinez was effectively denied judicial review.

### C. The Underlying Deportation Was Invalid Because Mr. Arce-Martinez Had Plausible Grounds for Section 212(c) Relief

As a separate and independent ground for this motion, and irrespective of whether Mr. Arce-Martinez's prior conviction is deemed to be an aggravated felony, Mr. Arce-Martinez's deportation was invalid because the IJ failed to advise him of his eligibility for Section 212(c) relief. Prior to 1996, a Legal Permanent Resident could apply for a discretionary waiver of deportation under former Immigration and Nationality Act § 212(c). 8 U.S.C. § 1182(c) (1995 ed.).

In 1996, Congress passed several laws affecting eligibility for Section 212(c) relief. AEDPA, which took effect on April 24, 1996, narrowed eligibility for Section 212(c) relief to exclude, *inter alia*, aliens with aggravated felonies. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 295 & n.7 (2001). IIRIRA, which took effect on September 30, 1996, eliminated Section 212(c) relief entirely. *See id.* Subsequently, the position of the Attorney General was that the repeal of Section 212(c) relief for aggravated felons was retroactive. *See St. Cyr*, 533 U.S. at 297-98 (describing the position of the Attorney General).

Mr. Arce-Martinez's deportation hearing occurred after AEDPA's effective date (but before enactment of IIRIRA), and was thus affected by AEDPA's elimination of Section 212(c) relief for aliens with aggravated felonies. In fact, just days before Mr. Arce-Martinez's deportation hearing, the Board of Immigration Appeals held that AEDPA's bar on Section 212(c) relief applied retroactively to aliens like Mr. Arce-Martinez, whose immigration proceedings were pending prior to AEDPA's enactment, if they had failed to file Section 212(c) applications prior to AEDPA's effective date. *See Matter of Soriano*, Int. Dec. 3289 (BIA June 27, 1996). Subsequently, the Attorney General narrowed Section 212(c) relief even further, finding that AEDPA applied retroactively regardless of when any application for relief was filed. *See Matter of Soriano*, Int. Dec. 3289 (A.G. Feb. 21, 1997).

The Supreme Court, however, disagreed. In 2001, the Supreme Court held that the repeal of section 212(c) relief was available for criminal aliens who pleaded guilty to offenses when section 212(c) was available. *St. Cyr*, 533 U.S. at 320. Specifically, the Court held that "depriving removable aliens of consideration for § 212(c) relief produces an impermissible retroactive effect for aliens who, like respondent, were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." *Id.* Thus, under *St. Cyr*, the elimination of Section 212(c) relief cannot be retroactively applied.

**1.     Mr. Arce-Martinez Was Eligible for Section 212(c) Relief**

Mr. Arce-Martinez was ordered deported in July 1996, after the enactment of AEDPA, but prior to the effective date of IIRIRA. However, because his underlying conviction occurred by plea in November 1990, when Section 212(c) was available, he was still eligible for consideration for Section 212(c) relief. *See St. Cyr*, 533 U.S. at 320.

To qualify for such a discretionary waiver, Section 212(c) required the alien to have legal permanent resident status and seven years of unrelinquished domicile. 8 U.S.C. § 1182(c) (1995 ed.). Mr. Arce-Martinez gained his legal permanent residence in 1989. Moreover, because he acquired legal permanent residency through amnesty, his period of lawful domicile began accruing upon the application for amnesty, as opposed to when it was granted. *De Robles v. I.N.S.*, 58 F.3d 1355, 1360-1361 (9th Cir. 1995). Legal domicile for the purposes of section 212(c) continued to accrue until the order of deportation was final. *See United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996). Mr. Arce-Martinez thus acquired

domicile in 1987, when he petitioned for amnesty. Accordingly, at the time of his deportation in July 1996, as a legal permanent resident with more than seven years of domicile, Mr. Arce-Martinez qualified for Section 212(c) relief.

Nevertheless, the IJ erroneously informed Mr. Arce-Martinez that he was not eligible for Section 212(c) relief under *Matter of Soriano*, because he had not filed a waiver application prior to AEDPA's effective date. This advisement was clearly erroneous under *St. Cyr*.

### 2. Mr. Arce-Martinez Was Prejudiced by the IJ's Failure to Advise Him of His Eligibility For Section 212(c) Relief

In determining whether a defendant has been prejudiced by the defective deportation proceedings, a defendant need not show that he actually would have received relief. *See United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). Rather, he only has to show that he had "plausible grounds" for such relief. *Id.* If such relief was "plausible," then the deportation or removal cannot be used as a basis for a section 1326 indictment and it must be dismissed. Moreover, once Mr. Arce-Martinez makes a prima facie showing of prejudice, "the burden shifts to the government to demonstrate that the procedural violation [i.e., failure to advise alien of eligibility for discretionary relief] would not have changed the proceedings' outcome." *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003).

Here, Mr. Arce-Martinez was prejudiced because he had plausible grounds for Section 212(c) relief. The criteria for Section 212(c) relief includes the duration of an alien's residence, the impact of deportation on the family, the number of citizens in the family, and other factors. *See St. Cyr*, 533 U.S. at 296 n.5 (citing *Matter of Marin*, 16 I&N Dec. 581 (1978). In 1996, Mr. Arce-Martinez had lived lawfully in the United States for more than nine years, since his amnesty application was filed in 1987. He had a strong employment history and strong familial ties in the United States. Specifically, he was married to a lawful permanent resident and had U.S. citizen children, and was closely involved in his children's lives. His deportation would have had, and did have, a devastating effect on his family.

Such factors are more than sufficient to establish plausible grounds for Section 212(c) relief. Before 1996, Section 212(c) relief was often sought by those in deportation proceedings. *See St. Cyr*, 533 U.S. at 296. It was often granted. Indeed, a majority of applications for section 212(c) relief were approved. *Id.* at 296 n.5 (citing statistics regarding the frequency that Section 212(c) was granted). Moreover, the Ninth

Circuit has held that plausible grounds existed in similar circumstances. In *Ubaldo-Figueroa*, 364 F.3d at 1046, for example, the alien had a prior conviction for burglary of a dwelling. Nevertheless, the Ninth Circuit held that plausible grounds for Section 212(c) relief existed where the alien had a strong employment history, strong familial ties in the United States and took an active role in his children's lives. *Id*. at 1051. In particular, the court noted that having a U.S. citizen wife and children is a "weighty factor in support of the favorable exercise of discretion under § 212(c)." *Id*. Thus, the court found that the equities in the alien's favor were "significant," that he "had a plausible claim for relief" and that "the IJ's unconstitutional failure to inform him that he was eligible for § 212(c) relief prejudiced him." *Id*.

Here, likewise, Mr. Arce-Martinez had plausible grounds for relief. He was therefore prejudiced by the IJ's erroneous advisement that he was ineligible for Section 212(c) relief. However, to the extent that this Court does not believe that Mr. Arce-Martinez has shown sufficient equities, he asks this Court to set an evidentiary hearing, during which he can present evidence to show the plausibility that he would have received relief from deportation.

### 3. Exhaustion and Deprivation of Judicial Review Need Not Be Shown

As discussed above, an alien is excused from the exhaustion and deprivation of judicial review requirements if his waiver of appeal was invalid. An IJ's failure to advise an alien of his eligibility for relief renders the appeal waiver invalid, because it was not "considered and intelligent." *See United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

Here, Mr. Arce-Martinez's waiver of his right to appeal was not considered and intelligent. The IJ erroneously informed Mr. Arce-Martinez that, as an aggravated felon, he was not eligible for Section 212(c) relief under AEDPA. "The duty of the IJ to inform an alien of his eligibility for relief is mandatory, and the failure to do so constitutes a violation of the alien's due process rights." *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003).[6]

---

[6] The IJ further informed Mr. Arce-Martinez that, under the BIA's decision in *Matter of Soriano*, there was no exception for aliens with pending immigration proceedings who had not filed Section 212(c) applications prior to AEDPA's effective date. An appeal on that issue would have been futile, as the Attorney General later found AEDPA to be entirely retroactive, regardless of when immigration proceedings had begun or when any Section 212(c) application had been filed. *See Matter of Soriano*, Int. Dec. 3289 (A.G. Feb. 21, 1997); *St. Cyr*, 533 U.S. at 297-98.

### III.

### **MOTION TO SUPPRESS ANY STATEMENTS BY MR. ARCE-MARTINEZ**

**A.   The Court Must Suppress Mr. Arce-Martinez's Alleged Pre-*Miranda* Field Statements Because They Were Elicited as the Result of Custodial Interrogation**

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (restating *Miranda* principles). "The ruling in *Miranda* prohibits 'custodial interrogation' unless the government first gives warnings to the [subject of the interrogation]." *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1046 (9th Cir. 1990). Once a person is in custody, *Miranda* warnings must be given prior to any interrogation. *See United States v. Estrada-Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his "critical" rights. *United States v. Bland*, 908 F.2d 471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. *Miranda*, 384 U.S. at 474; *see also Edwards v. Arizona*, 451 U.S. 477, 484 (1981).

Here, there were no such *Miranda* advisement given in the field. Moreover, material produced by the government in discovery indicates that Agent Morales first confronted and interrogated Mr. Arce-Martinez regarding his immigration status at approximately 1:20 p.m. in an isolated area north of the international border. Reports characterize the areas as containing brush, and do not indicate that other pedestrian or vehicle traffic was nearby. This interrogation preceded any form of administration of *Miranda* rights by more than three and a half hours. Because Mr. Arce-Martinez was "in custody" at the time of this questioning, any statements by Mr. Arce-Martinez must be suppressed.

Custodial interrogation occurs when, under the totality of the circumstances, the questions asked by the authorities are reasonably likely to elicit an incriminating response from the subject. *See id.* Although questions that include routine biographical information usually do not trigger the safeguard of *Miranda v. Arizona*, 384 U.S. 436 (1996), "[t]hat exception is inapplicable . . . where the elicitation of information regarding immigration status is reasonably likely to inculpate the [subject]." *Id.*

//

In *United States v. Kim*, 292 F.3d 971, 973 (9th Cir. 2002),[7] the Ninth Circuit noted that the following factors are to be considered in deciding whether or not a police-dominated atmosphere exists: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* (citations omitted); *see also United States v. Estrada-Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980) (in context of custody at the border, "[t]he factors to be weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the pressure exerted to detain him."). The Ninth Circuit also recognizes that "question[s] implying that [the agent] suspected [the defendant] of criminal activity" can give rise to a reasonable belief that one is not free to ignore the questions and leave. *United States v. Chavez-Valenzuela,* 268 F.3d 719, 725 (9th Cir. 2001), overruled on other grounds, *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007).[8]

It is not necessary that an individual be physically restrained in any fashion. In *United States v. Beraun-Panez*, 812 F.2d 578 (9th Cir. 1987), the Ninth Circuit found that an individual questioned out in an open field, who was neither held nor handcuffed nor told that he was under arrest, was nonetheless in custody for *Miranda* purposes. *Beraun-Panez* held that "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding." 812 F.2d at 580.[9]

Here, the criteria for a police-dominated atmosphere as articulated in *Kim* are clearly met. First, although the language used to summon Mr. Arce-Martinez is not precisely indicated in the reports, Agent Morales did clearly indicate that he was a law enforcement officer and that Mr. Arce-Martinez was in custody. The facts that Agent Morales was in uniform, confronting a pedestrian, in an isolated area with no

---

[7] In *Kim*, the Ninth Circuit found that a Korean woman who went to her own store, voluntarily, because an officer's visit prompted her to do so was in custody even though she was in familiar surroundings because the police "temporarily took over complete control of Kim's store creating a 'police-dominated atmosphere.'" 292 F.3d at 977. This combined with difficulty with English and isolation from family supported the finding that Kim did not willingly agree to submit to an encounter with the police. *Id.*

[3] *Chavez-Valenzuela* involved a roadside stop of a motorist on a public street, out in the open.

[4] The police confronted Beraun-Panez with his alienage, accused him of lying and kept him separated from his co-worker in a remote rural area. *Beraun-Panez*, 812 F.2d at 580.

means to escape, further substantiate this factor and enhance the reasonable belief that Mr. Arce-Martinez was not free to leave. Second, Mr. Arce-Martinez was confronted with evidence of guilt. He was apprehended in an isolated area, hiding in the brush, and immediately interrogated about his immigration status. Moreover, the agent's questioning bore on Mr. Arce-Martinez's alienage, which is an element of the charged offense, 8 U.S.C. § 1326. *See United States v. Meza-Soria*, 935 F.2d 166, 171 (9th Cir. 1991). This question in such a setting carried with it implicit suspicion of criminal activity. A person subjected to such questioning in such a situation would not reasonably feel free to leave, and thus is subject to custodial interrogation. *See Chavez-Valenzuela*, 268 F.3d at 725. Third, the physical surrounding of the interrogation was a remote area just north of the international border. The reports do not mention any vehicular or pedestrian traffic, or any landmarks such as homes or businesses. The remaining factors, the length of the detention and the amount of pressure applied to Mr. Arce-Martinez, are unclear from the reports. But because Mr. Arce-Martinez was apprehended in a rural area, by a uniformed agent, and interrogated about elements of a criminal offense, his alleged statements must be suppressed.

In the context of an encounter between border patrol and an individual near the international border, any questioning regarding an individual's alienage falls under the rubric of custodial interrogation. Furthermore, because of the close relationship between civil and criminal immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS [agents] should generally be accompanied by the *Miranda* warnings." *United States v. Mata-Abundiz*, 717 F.2d 1277, 1279 (9th Cir. 1983).

In *United States v. Gonzalez-Sandoval*, 894 F.2d 1043 (9th Cir. 1990), the defendant appeared at a local police station to provide his state parole officer with a urine sample. *Id.* at 1046. A second parole officer accused Mr. Gonzalez-Sandoval of being a deported alien and called the Border Patrol. *Id.* The Border Patrol came to the station, and without warning him pursuant to *Miranda*, asked Mr. Gonzalez-Sandoval where he was born and whether he possessed documents to verify the legality of his presence in the United States. *Id.* The Border Patrol agents then took Mr. Gonzalez-Sandoval to the Calexico Border Patrol Station. Failing to administer the *Miranda* warnings a second time, the agents questioned Mr. Gonzalez-Sandoval about any alias he possessed. *Id.* The agents ran an INS record check against Mr. Gonzalez-Sandoval's name and alias, and found Mr. Gonzalez-Sandoval's prior immigration record. *Id.* The Ninth Circuit found that the district

//

court erred in failing to suppress the unwarned, prompted statements by Mr. Gonzalez-Sandoval about his name and alias. *Id.* at 1047.

In *United States v. Mata-Abundiz*, an INS agent visited the defendant in a state jail to obtain biographical information to determine the defendant's citizenship status. 717 F.2d at 1278. The agent knew about the state charges against Mr. Mata-Abundiz, and did not warn him pursuant to *Miranda* prior to obtaining the biographical data. *Id.* Afterwards, the agent made further inquiries at his office and within three hours returned to the jail to charge Mr. Mata-Abundiz with a federal immigration offense. *Id.* Despite the fact that the agent characterized his interrogation as pursuant to a civil investigation, the court held that the agent should have warned Mr. Mata-Abundiz as required by *Miranda* because the agent knew his interrogation could lead to federal charges against the defendant. *Id.* at 1278-1279.

Here, it is obvious that the information the agent elicited from Mr. Arce-Martinez regarding his citizenship and application for permission to enter was "reasonably likely to inculpate" him. The questions served no purpose other than inculpation. They are in fact two of the four elements that they government must prove to obtain a conviction for a violation of 8 U.S.C. § 1326. Moreover, it is undisputed that Mr. Arce-Martinez was not read his *Miranda* rights at that point, nor advised that his answers to the agent's questions could result in federal charges against him. Therefore, the statements must be suppressed.

**B.     Any Pre-*Miranda* Statements at the Station Must Be Suppressed**

The discovery is unclear as to whether Mr. Arce-Martinez made statements at the border patrol station, prior to administration of his *Miranda* rights. To the extent he did so, Mr. Arce-Martinez was in custody at the time of the alleged questioning, as he had been deprived of his freedom by the agents, and had not been provided *Miranda* warnings prior to this questioning. Therefore, this Court should suppress any pre-*Miranda* statements made by Mr. Arce-Martinez at the station.

**C.     Mr. Arce-Martinez's Alleged Post-*Miranda* Statements Must Be Suppressed**

Any post-Miranda statements must also be suppressed because any *Miranda* warnings were withheld until after Mr. Arce-Martinez had already been questioned and made statements. "The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Missouri v. Seibert*, 542 U.S. 600, 611-12 (2004) (plurality). "By any objective measure," where interrogators withhold warnings until

1  after interrogation succeeds in eliciting a confession, "the warnings will be ineffective in preparing a suspect
2  for successive interrogation, close in time and similar in content." *Id.* at 613.  Unless the warnings could
3  place a suspect who has just been interrogated in a position to make an informed choice to stop talking even
4  if he had talked earlier, "there is no practical justification for accepting the formal warnings as compliance
5  with *Miranda*, or for treating the second stage of interrogation as distinct from the first . . . " *Id.* at 612.  Thus,
6  "it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning
7  as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally
8  punctuate them in the middle." *Id.* at 614.

9  Here, the agents intentionally questioned Mr. Arce-Martinez without the benefit of *Miranda* warnings,
10 and after eliciting statements, provided him with *Miranda* warnings and recorded his statement.  Because the
11 agents intentionally questioned Mr. Arce-Martinez without reading him his *Miranda* rights, under *Seibert*,
12 his subsequent, post-*Miranda* statements must be suppressed.

13 **D.      Any Statements Made By Mr. Arce-Martinez Must Be Suppressed Because They Were Not**
14 **         Voluntary**

15 Mr. Arce-Martinez requests a voluntariness hearing pursuant to 18 U.S.C. § 3501 concerning any
16 statements that the government alleges he made.  Even where the procedural safeguards of *Miranda* have
17 been satisfied, a criminal defendant is deprived of due process of law if his conviction is founded upon an
18 involuntary confession.  *Arizona v. Fulminante*, 499 U.S. 279 (1991); *Jackson v. Denno*, 378 U.S. 368, 387
19 (1964).  The government bears the burden of proving, by a preponderance of the evidence, that a confession
20 is voluntary.  *Lego v. Twomey*, 404 U.S. 477, 483 (1972).  Moreover, because "'suppression hearings are
21 often as important as the trial itself,'" *United States v. Prieto-Villa*, 910 F.2d 601, 610 (9th Cir. 1990)
22 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), the Court's findings should be supported by evidence,
23 not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings.
24 //
25 //
26 //
27 //
28 //

## IV.

## MOTION FOR LEAVE TO SUPPLEMENT MOTIONS AND TO FILE ADDITIONAL MOTIONS

Defense counsel is still in the process of obtaining evidence in support of these motions. In addition, discovery is continuing. In particular, defense counsel is still waiting to receive discoverable materials related to the defendant's interrogation, as well as a supplemental A-file. Therefore, counsel requests the opportunity to supplement this motion with further evidence and briefing at or prior to the hearing on this matter, and to file additional motions as necessary.

## V.

## CONCLUSION

For the foregoing reasons, Mr. Arce-Martinez respectfully requests that the Court grant the above motions.

Respectfully submitted,

DATED: February 22, 2008  /s/ *Jennifer L. Coon*
**JENNIFER L. COON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Arce-Martinez

1 **CERTIFICATE OF SERVICE**

2     Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of
3 information and belief, and that a copy of the foregoing document has been caused to be delivered this day
4 upon:

5     Courtesy Copy Court

6     Copy Christopher Alexander via ECF/NEF

7 Dated: February 22, 2008                  */s/ Jennifer L. Coon*
                                                                          JENNIFER L. COON
8                                                                           Federal Defenders of San Diego, Inc.
                                                                          225 Broadway, Suite 900
9                                                                           San Diego, CA 92101-5030
                                                                          (619) 234-8467  (tel)
10                                                                      (619) 687-2666  (fax)
                                                                         e-mail: Jennifer_Coon@fd.org

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28